IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALDINE HILT,<br>ET AL., | : | CONSOLIDATED UNDER<br>MDL 875 |
| | : | |
| | : | |
| Plaintiffs, | : | Transferred from the |
| | : | Northern District of |
| v. | : | California |
| | : | (Case No. 11-02367) |
| | : | |
| FOSTER WHEELER LLC, | : | |
| ET AL., | : | E.D. PA CIVIL ACTION NO. |
| | : | 2:11-66273-ER |
| Defendants. | : | |

#### O R D E R

**AND NOW,** this **28th** day of **January, 2014**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant

Huntington Ingalls (Doc. No. 45) is **GRANTED.**[1]

---

[1]    This case was transferred in June of 2011 from the
United States District Court for the Northern District of
California to the United States District Court for the Eastern
District of Pennsylvania as part of MDL-875.

Plaintiffs allege that Decedent Robert Hilt ("Decedent"
or "Mr. Hilt") was exposed to asbestos, inter alia, while working
as a machinist mate helper in the Navy in the late 1960s.
Defendant Huntington Ingalls, Inc. (f/k/a Northrop Grumman
Shipbuilding, Inc., and hereinafter "Huntington Ingalls") built
ships. The alleged exposure pertinent to Defendant Huntington
Ingalls occurred during Decedent's work aboard:

• USS Midway (CV-41)

Plaintiffs brought claims against various defendants to
recover damages for Decedent's alleged asbestos-related death.
Defendant Huntington Ingalls has moved for summary judgment
arguing that (1) it had no duty to warn Decedent about any of the
hazards aboard the ship it built, (2) Plaintiffs have no evidence
of exposure for which Defendant is liable, and (3) it is immune
from liability by way of the government contractor defense.

Defendant contends that California or maritime law applies. Plaintiffs also contend that California or maritime law applies.

## I.    Legal Standard

### A.    Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B.    The Applicable Law

#### 1.    Government Contractor Defense (Federal Law)

Defendant's motion for summary judgment on the basis of the government contractor defense is governed by federal law. In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)(Robreno, J.).

2

2.   State Law Issues (Maritime versus State Law)

The parties assert that either maritime law or California law applies. Where a case sounds in admiralty, application of a state's law (including a choice of law analysis under its choice of law rules) would be inappropriate. <u>Gibbs ex rel. Gibbs v. Carnival Cruise Lines</u>, 314 F.3d 125, 131-32 (3d Cir. 2002). Therefore, if the Court determines that maritime law is applicable, the analysis ends there and the Court is to apply maritime law. <u>See</u> <u>id.</u>

Whether maritime law is applicable is a threshold dispute that is a question of federal law, <u>see</u> U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. <u>See</u> <u>Various Plaintiffs v. Various Defendants ("Oil Field Cases")</u>, 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. <u>See</u> <u>Conner v. Alfa Laval, Inc.</u>, 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. <u>Id.</u> at 463-66 (discussing <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. <u>Id.</u> In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. <u>See</u> <u>Sisson v. Ruby</u>, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." <u>See</u> <u>Deuber v. Asbestos Corp. Ltd.</u>, No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in <u>Conner</u>) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" <u>Grubart</u>, 513 U.S. at 534 (citing <u>Sisson</u>, 497 U.S. at 364, 365, and n.2).

Locality Test

If a service member in the Navy performed some work at
shipyards (on land) or docks (on land) as opposed to
onboard a ship on navigable waters (which includes a
ship docked at the shipyard, and includes those in "dry
dock"), "the locality test is satisfied as long as some
portion of the asbestos exposure occurred on a vessel
on navigable waters." Conner, 799 F. Supp. 2d at 466;
Deuber, 2011 WL 6415339, at *1 n.1. If, however, the
worker never sustained asbestos exposure onboard a
vessel on navigable waters, then the locality test is
not met and state law applies.

Connection Test

When a worker whose claims meet the locality test was
primarily sea-based during the asbestos exposure, those
claims will almost always meet the connection test
necessary for the application of maritime law. Conner,
799 F. Supp. 2d at 467-69 (citing Grubart, 513 U.S. at
534). This is particularly true in cases in which the
exposure has arisen as a result of work aboard Navy
vessels, either by Navy personnel or shipyard workers.
See id. But if the worker's exposure was primarily
land-based, then, even if the claims could meet the
locality test, they do not meet the connection test and
state law (rather than maritime law) applies. Id.

It is undisputed that the alleged exposures pertinent
to Defendant occurred aboard a ship. Therefore, these exposures
were during sea-based work. See Conner, 799 F. Supp. 2d 455;
Deuber, 2011 WL 6415339, at *1 n.1. Accordingly, maritime law is
applicable to Plaintiffs' claims against Defendant. See id. at
462-63.

C.  Causation Under Maritime Law

In order to establish causation for an asbestos claim
under maritime law, a plaintiff must show, for each defendant,
that, inter alia, he was exposed to asbestos for which the
defendant is liable such that the asbestos was a substantial
factor in causing the injury he suffered. Lindstrom v. A-C Prod.
Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005); citing Stark v.
Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir.
2001). A mere showing that an asbestos product was present
somewhere at plaintiff's place of work is insufficient. Id.

4

Rather, the plaintiff must show "'a high enough level of exposure
that an inference that the asbestos was a substantial factor in
the injury is more than conjectural.'" Id. at 376 (quoting
Harbour, 1991 WL 65201, at *4).

## II.  Defendant Huntington Ingalls' Motion for Summary Judgment

No Duty to Warn

            Huntington Ingalls argues that, as a shipbuilder, it
had no duty to warn Decedent about any of the hazards aboard the
USS Midway, which it built.

Exposure / Causation

            Huntington Ingalls argues that Plaintiffs have no
evidence of asbestos exposure for which it is liable.

Government Contractor Defense

            Huntington Ingalls asserts the government contractor
defense, arguing that it is immune from liability in this case,
and therefore entitled to summary judgment, because the Navy
exercised discretion and approved reasonably precise
specifications for the products at issue, Defendants provided
warnings that conformed to the Navy's approved warnings, and the
Navy knew about the hazards of asbestos. In asserting this
defense, Huntington Ingalls relies upon the affidavit of Captain
Wesley Charles Hewitt.

### B.  Plaintiffs' Arguments

No Duty to Warn

            Plaintiffs contend that Defendant owed Decedent a duty
of reasonable care under the circumstances, which included
warning him of hazards aboard the USS Midway.

Exposure / Causation

            Plaintiffs contend that Decedent was exposed to
asbestos from insulation aboard the USS Midway and that Defendant
is liable for injuries arising from this exposure. In support of
their assertion that they have identified sufficient evidence to
survive summary judgment, Plaintiffs cite to the following
evidence:

_____

- Declaration of Horace Owens
  Mr. Owens provides testimony that he worked
  in close proximity to Decedent aboard the USS
  Midway during the late 1960s and that the two
  of them breathed in dust from insulation
  surrounding steam pipes aboard that ship. He
  states that he did not see any warnings about
  asbestos aboard the ship.

  (Pl. Ex. A, Doc. No. 52-2.)

  - Declaration of Expert Charles Ay
    Mr. Ay provides testimony that he worked
    aboard the USS Midway during the 1970s (after
    the time of Decedent's work aboard it). He
    provides testimony that there was asbestos-
    containing thermal insulation aboard the
    ship, and that, even as late as the 1970s,
    approximately 80% of the thermal insulation
    was still the original insulation installed
    by Defendant. He provides expert testimony
    opining that it is virtually impossible that
    Decedent was not exposed to respirable
    asbestos from this insulation in significant
    quantities.

    (Pl. Ex. B, Doc. No. 52-2.)

  - Declaration of Daniel M. Rabin, M.D.
    Dr. Rabin provides expert testimony that the
    alleged asbestos exposure was a significant
    contributing factor to the development of
    Decedent's illness.

    (Pl. Ex. C, Doc. No. 52-3.)

Government Contractor Defense

Plaintiffs argue that summary judgment in favor of
Defendant on grounds of the government contractor defense is not
warranted because there are genuine issues of material fact
regarding its availability to Defendant.

E.D. Pa. No. 2:11-66273-ER          **AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

_____

C.  **Analysis**

        Defendant Huntington Ingalls argues that Plaintiffs
have no evidence of asbestos exposure for which it is liable.
Plaintiffs have presented evidence from Mr. Owens that Decedent
was exposed to respirable dust from thermal insulation
surrounding steam pipes aboard the USS Midway. However, there is
no evidence that this insulation contained asbestos. Plaintiffs'
expert, Mr. Ay, confirms that there was asbestos insulation
aboard the ship. However, he does not identify the steam pipe
insulation to which Decedent was exposed as being asbestos
insulation and provides no expert opinion testimony as to whether
or why steam pipe insulation would have contained asbestos.
Moreover, there is no evidence that Decedent was exposed to
respirable dust from any asbestos-containing insulation aboard
the ship. Mr. Ay opines that it would be virtually impossible for
Decedent (or anyone else serving aboard the ship) to have avoided
exposure to respirable asbestos dust because there was so much
asbestos insulation aboard the ship. Under maritime law, this
evidence is insufficient. See Lindstrom, 424 F.3d at 492; Stark,
21 F. App'x at 375-76. Without evidence that Decedent was
actually exposed to respirable dust from asbestos-containing
insulation aboard the ship, no reasonable jury could conclude
from the evidence that Decedent was exposed to asbestos-
containing insulation such that it was a substantial factor in
the development of his illness, because any such finding would be
based on conjecture. See Conner, 842 F. Supp. 2d at 801;
Lindstrom, 424 F.3d at 492. Accordingly, summary judgment in
favor of Defendant is warranted with respect to all of
Plaintiffs' claims against it. Anderson, 477 U.S. at 248-50.

        In light of this determination, the Court need not
reach any of the other issues raised by Defendant.

7